IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES ALLEN SPURLOCK,

                Plaintiff,

vs.                                             Case No. 18-3275-SAC

CORIZON HEALTH, et al.,

                Defendants.

**O R D E R**

This case is before the court to screen plaintiff's pro se complaint pursuant to 28 U.S.C. § 1915A.

I. The complaint

Plaintiff is a state prisoner who alleges a violation of his constitutional rights under the Fifth, Eighth and Fourteenth Amendments. Plaintiff also alleges negligence. Plaintiff asserts that he is epileptic and that he has grand mal seizures. He claims injuries because of defendants' failures to protect him from being harmed by a seizure.

Plaintiff has named several defendants. These defendants are: Corizon Health, the health care provider for the Kansas Department of Corrections; Correct Care Solutions, the health care provider for the Johnson County Adult Detention Center; Janet Hays, a nurse at the Reception and Diagnostic Unit (RDU) at the El Dorado Correctional Facility; Dr. Gordon Harrod, a doctor at the RDU;

1

William Wade, a nurse at the RDU; Dr. Dennis Kepka, a doctor at Ellsworth Correctional Facility (ECF) employed by Corizon Health; Tony Rusch, a nurse employed by Corizon Health at ECF; Vicky Lanter, a nurse at ECF employed by Corizon Health; Mable Walker, a director of nursing employed by Corizon Health; Julie Patterson, a health services administrator employed by Corizon Health; Marty Sauers, the warden at ECF; FNU Pruitt, a unit manager at ECF; Tim Taylor, a unit team member at ECF; and FNU Morrison, a sergeant at ECF. All of the defendants are sued in their individual and official capacities.

Plaintiff alleges that he was housed at the Johnson County Adult Detention Center (JCADC) for close to four years, ending on October 25, 2016. There he was recognized as having epilepsy and suffering grand mal seizures for which he was taken to the hospital several times. Because of this condition, plaintiff was placed on "bottom level/bottom bunk" ("BL/BB") restriction at JCADC. While at JCADC plaintiff received Gabapentin – 800 mgs at morning and noon, 600 mgs twice at night – to prevent seizures.

Plaintiff was transferred to the RDU at El Dorado Correctional Facility on October 25, 2016. When he arrived, he was assessed by defendant Janet Hays. She refused to allow plaintiff Gabapentin because it cost too much and inmates had been known to abuse it. She offered plaintiff an alternative such as Dilantin, Kepra, or Elavil. Plaintiff told Hays that he had used Gabapentin since

2013, that he had not been found guilty of abusing his medications, and that his medical records showed that he did not tolerate Dilantin or Valproic acid. Plaintiff alleges that he warned Hays that he would suffer excruciating side effects if he was not left on the medication he was receiving at JCADC. He further claims that he told her he should be on BL/BB restriction because of his epilepsy and that she said she would make note of it.

Plaintiff, however, was assigned to an upper level cell for a couple of days before he was moved. Plaintiff claims that he was forced to take Dilantin (or be punished for "self-harm") from approximately October 27, 2016 to November 3, 2016. This caused plaintiff to have extreme headaches, dizziness, double vision, vomiting and extreme constipation. Plaintiff alleges that he was given aspirin and Excedrin for the headaches. He claims that he had epileptic seizures on or around November 3, 2016 and that he was taken to the infirmary.

There he was seen by defendant Dr. Harrod. Plaintiff told Dr. Harrod that he normally took Gabapentin. Dr. Harrod said it was expensive, but that he would put plaintiff back on Gabapentin at a reduced dosage because he wanted to try something new. Plaintiff implored without success that he be returned to his regular dose. Plaintiff further claims that defendant Dr. Harrod did not note in plaintiff's file that plaintiff should be BL/BB restricted.

Plaintiff alleges that he informed defendant Wade of plaintiff's situation between November 6 and November 18, 2016, when Wade gave plaintiff a physical. According to plaintiff, Wade did nothing.

Plaintiff had another seizure on November 19 or November 20, 2016. On November 21, 2016, plaintiff was transferred to Ellsworth Correctional Facility. Plaintiff alleges that he told the ECF staff everything he told the RDU staff. Plaintiff claims he had a seizure on November 26, 2016 because his Gabapentin dosage had not been corrected. He states that he told this to defendant Tony Rusch at ECF, but she did not refer plaintiff to a doctor or take other action.

On November 29, 2016, plaintiff was moved to a top-walk cell at ECF. Plaintiff alleges that defendant Morrison insisted that plaintiff make the move, although plaintiff told him that plaintiff was epileptic and BL/BB restricted. Plaintiff further claims that he told defendant Tim Taylor and defendant Pruitt the same information a couple of days later. Nothing was done. So, plaintiff completed a medical request form on December 11, 2016. The next day plaintiff was triaged by defendant Rusch. She told plaintiff to talk to the doctor about it. This led to a heated argument. Defendant Mable Walker intervened. According to plaintiff, Walker also did nothing about plaintiff's concerns. Plaintiff wrote a "Form 9" to defendant Julie Patterson on December

4

13, 2016 to no avail.  On December 17, 2016, plaintiff had a seizure and cut open his mouth when he fell.  The next day he reported the seizure and his injuries to prison officials, but there was no change made to his medication or his cell assignment.

On December 19, 2016 and December 23, 2016, plaintiff wrote "Form 9s" to defendants Pruitt and Sauers asking for action, but received none.  On January 3, 2017, plaintiff completed a medical request form.  This was triaged the next day by defendant Vicky Lanter.  According to plaintiff, nothing was done.  Nor did plaintiff's treatment change when his wife complained to the Corizon Health office in Topeka, Kansas and to the warden at ECF (defendant Sauers).

Plaintiff claims that he wrote an informal resolution regarding the same issues on January 10, 2017 and followed that with a grievance on January 25, 2017.  Neither pleading received a response.

On February 3, 2017, plaintiff was seen by defendant Dr. Kepka.  Dr. Kepka promised action but nothing happened until after February 16, 2017, when plaintiff had a seizure and fell down stairs.  After the initial seizure, plaintiff suffered a second seizure and was taken to the hospital.  Plaintiff returned to prison the same day.  On February 17, 2017, plaintiff had another seizure and cut is eyebrow open.  The next day, Dr. Kepka told

plaintiff that he was adjusting plaintiff's medication and that plaintiff would be BL/BB restricted.

II. Screening standards

Section 1915A requires the court to review cases filed by prisoners seeking redress from a governmental entity or employee to determine whether the complaint is frivolous, malicious or fails to state a claim upon which relief may be granted.  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).  But, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

When deciding whether plaintiff's complaint "fails to state a claim upon which relief may be granted," the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The court accepts the plaintiff's well-pled factual allegations as true and

views them in the light most favorable to the plaintiff. United States v. Smith, 561 F.3d 1090, 1098 (10th Cir. 2009). The court may also consider the exhibits attached to the complaint. Id. The court, however, is not required to accept legal conclusions alleged in the complaint as true. Iqbal, 556 U.S. at 678. "Thus, mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice" to state a claim. Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting Twombly, 550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557).

III. Eighth Amendment standards

Plaintiff's most viable constitutional claims allege a violation of plaintiff's Eighth Amendment rights.[1] The Eighth

---
[1] As mentioned, plaintiff's complaint also references the Fifth Amendment and the Fourteenth Amendment. The Eighth Amendment is applicable to the States because of the Due Process Clause of the Fourteenth Amendment. See Riddle v.

7

Amendment is violated when a prison official is deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Deliberate indifference" contains an objective and a subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The objective component requires that the inmate's medical need be sufficiently serious as to mandate treatment, if diagnosed by a physician, or so obvious that a lay person would recognize the need for a doctor's attention. Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999). The subjective component requires knowledge by the defendant of an excessive risk to an inmate's health and safety and disregard of that risk. Farmer, 511 U.S. at 837. The subjective component is not satisfied by an "inadvertent failure to provide adequate care, negligent misdiagnosis, or . . . difference of opinion with medical personnel regarding diagnosis or treatment." Clemmons v. Bohannon, 956 F.2d 1523, 1529 (10th Cir. 1992).

IV. Negligence standards

"A plaintiff in a negligence action must prove four elements: a duty owed to the plaintiff, breach of that duty, the breach of the duty was the cause of the injury to the plaintiff, and damages suffered by the plaintiff." Shirley v. Glass, 308 P.3d 1, 6 (Kan.

---

Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996). Plaintiff allegations state no cause of action under the Fifth or Fourteenth Amendment which is independent of the Eighth Amendment. See Whitley v. Albers, 475 U.S. 312, 326-27 (1986)(Eighth Amendment subsumes claims of a substantive due process violation); Riddle, supra (same).

2013). The Kansas Court of Appeals has held that "the duty of a jailer to exercise reasonable care to those in custody is triggered by actual or constructive knowledge of an unreasonable risk that the prisoner will be subjected to physical harm." Rogers v. Bd. of Comm'rs of Shawnee Cnty, 2015 WL 1514019 *4 (Kan.App. 3/27/2015)(citing Restatement (Second) of Torts § 314 (1964)).

V. Correct Care Solutions

Plaintiff alleges that defendant Correct Care Solutions (CCS) violated plaintiff's Eighth Amendment rights by failing to forward plaintiff's medical records from JCADC to the Kansas Department of Corrections and Corizon Health, when plaintiff was transferred on October 25, 2016, and even after plaintiff's wife informed CCS on November 15, 2016 that his medication dosages at that time were wrong. Plaintiff does not allege, however, that the other defendants in this case disbelieved plaintiff when he told them about his health conditions and medications at JCADC. Nor does he allege that he would have been treated differently by the other defendants, if they had plaintiff's medical records from CCS. He only alleges that the other defendants opted not to follow the treatment plaintiff told them he received at JCADC. This does not state a claim that CCS was deliberately indifferent to plaintiff's medical condition. See Blondheim v. County of Olmsted, 47 Fed.Appx. 786, 789 (8th Cir. 2002)(cannot show harm from failure to forward records if relevant medical information was known to

9

persons caring for plaintiff); Johnson v. Westermeyer, 2014 WL 2807667 *9 (D.Ore. 6/19/2014)(dismissing negligence claim alleging failure to forward records because plaintiff failed to link injury to the alleged misconduct); Johnson v. Adams, 2011 WL 2682645 *6 (E.D.Ark. 4/5/2011)(dismissing constitutional claim alleging failure to transfer records for same reasons where plaintiff advised prison authorities of his condition); see also Williams v. Swenson, 2015 WL 5332757 *5 (E.D.Wis. 9/10/2015)(no constitutional duty to forward an inmate's medical records to a new institution upon the inmate's request). Nor are there facts alleged showing that CCS failed to forward the records knowing that it would risk serious harm to plaintiff. This is further grounds to dismiss an Eighth Amendment claim. Pabon v. Goord, 2003 WL 1787268 *11 & *17 (S.D.N.Y. 3/28/2003)(dismissing constitutional claims where there was no evidence that delay in treatment caused by failure to send medical records to specialty consultants was the product of improper motive or intentional disregard for plaintiff's condition and there was no evidence that it had an impact upon plaintiff's actual care).

Plaintiff does not allege facts supporting a duty of care by CCS toward plaintiff once plaintiff was transferred from JCADC. CCS was not plaintiff's jailer. CCS was not responsible for plaintiff's medical care after he left JCADC. Also, CCS was not responsible for the conduct of the other defendants in this case.

As a general rule, there is no duty to act for the protection of others. See <u>Thomas v. County Comm'rs of Shawnee County</u>, 198 P.3d 182, 189 (Kan.App. 2008)(citing Restatement (Second) of Torts § 314 (1964)). There are exceptions to this rule. See, e.g., Restatement (Second) of Torts § 314A. Plaintiff has not alleged facts which plausibly satisfy an exception to the general rule or otherwise support a duty of care by CCS to plaintiff after plaintiff was transferred from the JCADC. Cf., <u>Gammill v. United States</u>, 727 F.2d 950, 954 (10th Cir. 1984)(no duty running from Government to plaintiffs that would have required Government to notify county health department of hepatitis in home of a woman treated by a physician employed by the United States).

## VI. <u>Janet Hays</u>

Defendant Hays is a nurse who saw plaintiff when he first entered RDU. Plaintiff does not allege an injury at RDU from a fall from an upper bunk or while climbing or descending stairs. Therefore, plaintiff's allegations against Hays must center upon her alleged decisions regarding plaintiff's drug regimen.

Plaintiff blames defendant Hays for the consequences of shifting his medication from Gabapentin to Dilantin.[2] But,

---

[2] It appears unlikely that this change would constitute an Eighth Amendment violation where there is no evidence that Hays was aware that the substituted medication would cause a significant medical problem. See <u>Toler v. Troutt</u>, 631 Fed.Appx. 545, 547-48 (10th Cir. 2015)(substituting different pain medication for Neurontin (a brand name for Gabapentin) does not violate Eighth Amendment); <u>Todd v. Bigelow</u>, 497 Fed.Appx. 839, 841-42 (10th Cir. 2012)(no deliberate indifference when a Neurontin prescription is changed to a different drug).

11

plaintiff saw Dr. Harrod on November 3 or 4, 2016 and Dr. Harrod shifted plaintiff back to Gabapentin, at a reduced dosage. This case was filed on November 7, 2018. Any ill effects from Hays' actions appear to have occurred more than two years before this case was filed. Therefore, there are grounds to believe that any claim against defendant Hays is barred by the two-year statute of limitations which covers negligence claims under Kansas law and claims under § 1983. See K.S.A. 60-513(a)(4); Lee v. Reed, 221 F.Supp.3d 1263, 1269 (D.Kan. 2016)(applying same two-year state limitations statute to § 1983 claim).

## VII. William Wade

Plaintiff alleges that defendant Wade gave him a physical at RDU sometime between November 6 and November 18, 2016. Plaintiff was moved to ECF on November 21, 2016. Thus, Wade is alleged to have seen plaintiff after plaintiff informed Dr. Harrod at RDU of plaintiff's issues with his medication and cell location. Plaintiff does not allege that he had a seizure after he saw Dr. Harrod at RDU and before he received a physical from defendant Wade. So, he alleges no intervening circumstance which would have suggested to Wade that Dr. Harrod's Gabapentin prescription was not effective. Plaintiff also does not allege that defendant Wade had the authority to alter plaintiff's prescription from Dr. Harrod. According to the complaint (Doc. No. 1, ¶ 48), plaintiff had received a BL/BB placement at RDU prior to seeing Wade.

12

Plaintiff did have a seizure at RDU shortly before he was transferred to ECF and after he saw Wade. But, plaintiff does not allege that he suffered an injury from the seizure because of his cell assignment at that time. And, plaintiff does not allege that he saw Wade again. These circumstances suggest to the court that Wade is not liable to plaintiff under a deliberate indifference or a negligence theory.

VIII. FNU Morrison

Plaintiff alleges that defendant Sergeant Morrison ordered plaintiff to move to a top-walk cell from a BL/BB cell at ECF on November 29, 2016. He further alleges that defendant Morrison deflected plaintiff's complaints that a top-walk cell was dangerous because of plaintiff's medical status as reflected in medical records plaintiff showed Morrison. Plaintiff, however, does not allege facts plausibly demonstrating that defendant Morrison had authority to determine or adjust plaintiff's cell placement or his medical treatment or that he impeded plaintiff's efforts to contact persons who held such authority. Therefore, it appears that the complaint fails to show that defendant Morrison caused an injury to plaintiff.

IX. Official capacity claims

Claims against an individual defendant in the defendant's official capacity is a means of suing the entity of which the individual defendant is an agent. Kentucky v. Graham, 473 U.S.

159, 165-66 (1985). A private corporation lacks an official capacity. James v. Sherrod, 2018 WL 466242 *1 n.1 (W.D.Okla. 1/18/2018). But, a suit against an individual employee of a private corporation in an "official capacity" is a suit against the corporation. Patton v. United Parcel Service, 910 F.Supp. 1250, 1269 (S.D.Tex. 1995). Accordingly, plaintiff may not bring an official capacity claim against Corizon Health or CCS. Moreover, any official capacity claim against an employee of Corizon Health is duplicative of plaintiff's claims against Corizon Health.[3]

Plaintiff may not bring an official capacity claim against the individual state employee defendants. A claim for injunctive relief is not appropriate against these defendants in their official capacity because plaintiff is currently housed at the Hutchinson Correctional Facility and there are no facts alleged showing that these defendants have responsibility over plaintiff's treatment at that facility. Plaintiff also does not expressly seek injunctive relief in his complaint. A claim for monetary damages against the defendant state employees in their official capacities pursuant to § 1983 is barred by the State's Eleventh Amendment immunity. See Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1196 (10th Cir. 1998)(the Eleventh Amendment immunity

---

[3] Plaintiff does not name an employee of CCS as a defendant.

of States bars a § 1983 claim against the State or state agencies in federal court).  The Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 et seq., provides for the liability of state governmental entities for damages caused by the negligent or wrongful acts or omissions of their employees "while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of" Kansas.  K.S.A. 75-6103(a).  But, the Eleventh Amendment immunity which protects the State of Kansas from being sued in federal court upon many federal law claims also applies to KTCA claims and other state law claims.  See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 107 & 121 (1984); Ndefru v. Kansas State University, 814 F.Supp. 54, 56 (D.Kan. 1993)(applying Eleventh Amendment bar to KTCA claim); Richardson-Longmire v. State Adjutant General, 1999 WL 156168 *7-8 (D.Kan. 3/8/1999) aff'd, 1999 WL 1032975 (10th Cir. 1999) cert. denied, 520 U.S. 1266 (2000)(applying bar to state statutory claim).

For the above-stated reasons, it appears that plaintiff's claims against defendants in their official capacities should be dismissed.

X. Conclusion

After carefully examining the complaint in this case, the court shall direct as follows.  First, the court directs plaintiff to show cause by January 10, 2019 why plaintiff's official capacity

claims against all defendants and plaintiff's individual capacity claims against defendant Hays, defendant Wade, defendant Morrison, and defendant CCS should not be dismissed for the reasons discussed in this order.  Second, the court directs the Clerk of the Court to prepare waiver of service forms for the following defendants: Corizon Health; Gordon Harrod; Dennis Kepka; Tony Rusch; Vicky Lanter; Mable Walker; Julie Patterson; Martin Sauers; Tim Taylor; and FNU Pruitt. Plaintiff bears the primary responsibility to provide sufficient address information for service of process or waivers of process upon each defendant.

    **IT IS SO ORDERED.**

    Dated this 19th day of December, 2018, at Topeka, Kansas.

                                           s/Sam A. Crow_____
                                           Sam A. Crow, U.S. District Senior Judge